J-S04018-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUBREY OTT | : | |
| | : | |
| Appellant | : | No. 1993 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 27, 2025
In the Court of Common Pleas of Montgomery County
Criminal Division at No:  CP-46-CR-0003854-2024

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 30, 2026**

Appellant, Aubrey Ott ("Aubrey"), appeals from the June 27, 2025 judgment of sentence imposing six to twenty-three months of incarceration for strangulation, endangering the welfare of a child ["EWOC"], simple assault, recklessly endangering another person ["REAP"], and conspiracy.[1]  The victims were her daughters, Ki.M. and Ky.M. (the "Children").  We affirm.

Aubrey is married to Gordon Ott ("Gordon" and, collectively with Aubrey, the "Otts"), her codefendant in this matter.[2]  The Children are Aubrey's daughters with her former husband.  The Otts had custody of the Children on the weekend of April 27 and April 28, 2024.  On the afternoon of Sunday, April

---

[1]  18 Pa.C.S.A. §§ 2718(a)(2), 4304(a)(1), 2701(a)(3), 2705(a), 903(a).

[2]  Gordon's appeal is pending at 1991 EDA 2025.

28, 2024, the Otts confronted the Children about agitating the Ott's dog, causing it to bark and whine. The Children denied it. N.T. Trial, 4/9/25, at 21-23, 67-68. The Otts accused the Children of lying. *Id.* at 23.

Ky.M., who was nine years old at the time of the incident, recalled that shortly before Ki.M. "got in trouble," Ky.M. was in the living room with the Otts. *Id.* at 59, 62-63. Ky.M. heard Gordon say, "this is what we did in the war." *Id.* at 62. Then she heard Aubrey say, "okay, I'll do it." *Id.* at 63. Aubrey then took a towel and a Wonder Woman cup and took Ki.M. into the bathroom. *Id.* at 63-64. Ky.M. remembered Aubrey and Ki.M. being in the bathroom for five minutes. *Id.* at 64.

Ki.M. testified that, when she went into the bathroom with Aubrey, she saw a red water bottle with a "Superwoman" symbol on it and a rag on the sink. *Id.* at 25-26, 37-39. Aubrey filled the water bottle and made Ki.M. face away from the sink and then lean backward with the back of her head over the sink. *Id.* at 26-27, 37-39. Aubrey then put the rag over Ki.M.'s face, pinched her nose, and poured water over her face. *Id.* at 27, 37-39. Ki.M. was unable to breathe during this procedure because Aubrey was holding her nose and because water entered her mouth when she opened her mouth. *Id.* at 56. Ki.M. was scared and so she leaned up, at which point Aubrey stopped what she was doing. *Id.* at 28. Later that evening, the Otts told Ki.M. to forget about what happened. *Id.* at 29.

Aubrey testified that Ki.M. had marker all over her face and Aubrey was washing it off. *Id.* at 99-100. She covered Ki.M.'s eyes, nose, and mouth to keep soap out. *Id.* at 100. Aubrey testified that Ki.M. could breathe during this process and that she never pinched Ki.M.'s nose. *Id.* at 101. Aubrey also testified that the ongoing custody proceedings between she and the Children's father had been contentious. *Id.*at 109.

The next morning, Aubrey once again told Ki.M. not to tell anyone. *Id.* When the Children got back to their father and stepmother's house that afternoon after school, Ki.M. told her stepmother about the incident. *Id.* The Children's father arrived home during the conversation and recognized what was done to Ki.M. as waterboarding. *Id.* at 78. Ki.M.'s father and stepmother reported the incident to police. *Id.* at 80.

Charges were filed; the matter proceeded to an April 9, 2025, bench trial, and the trial court found Aubrey guilty of the aforementioned offenses. Following the imposition of sentence, Aubrey filed this timely appeal. She presents five assertions of error:

> 1. The evidence was insufficient to support [Aubrey's] conviction for strangulation in violation of 18 Pa.C.S.A. § 2718(a)(2), because there was insufficient proof beyond a reasonable doubt that [Aubrey] knowingly and intentionally 'impeded the breathing' of [Ki.M.] and did so by 'blocking her nose and mouth' as these elements have been or should be interpreted in light of the conduct the legislature intended to criminalize in the statute.

> 2. The evidence was insufficient to support [Aubrey's] conviction for simple assault in violation of 18 Pa.C.S.A. § 2701(a)(3), because there was insufficient proof beyond a

- 3 -

reasonable doubt that that [Appellant] attempted by physical menace to put her daughter in fear of 'imminent serious bodily injury' as this element should be interpreted in light of the conduct the legislature intended to criminalize in this statute.

3. The evidence was insufficient to support [Aubrey's] conviction for [REAP] in violation of 18 Pa.C.S.A. § 2705, because there was insufficient proof beyond a reasonable doubt that [Aubrey] created not just an apprehension of danger, but an 'actual danger of death or serious bodily injury,' as this element has been or should be interpreted in light of the conduct the legislature intended to criminalize in this statute.

4. The evidence was insufficient to support [Aubrey's] conviction for [EWOC] in violation of 18 Pa.C.S.A. § 4304(a)(1), because there was insufficient proof beyond a reasonable doubt that [Aubrey], as a parent, violated 'her duty of care, protection, and support' towards her daughter as this element has been or should be interpreted in light of the conduct the legislature intended to criminalize in this statute.

5. The evidence was insufficient to support [Aubrey's] convictions for criminal conspiracy to commit any crime in violation of 18 Pa.C.S.A. § 903, because there was insufficient proof beyond a reasonable doubt that [Aubrey] committed any crime herself, let alone that she and her husband [Gordon], entered into a specific unlawful agreement to engage in conduct that would constitute any crime.

Aubrey's Brief at 2-3.

Each of Aubrey's assertions of error challenges the sufficiency of the

Commonwealth's evidence. The following standard governs our review:

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, this Court may not

substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Commonwealth v. Smith***, 146 A.3d 257, 261-262 (Pa. Super. 2016) (internal citations and quotation marks omitted).

First, Aubrey argues that her strangulation conviction must fall for lack of evidence that she knowingly and intentionally impeded Ki.M.'s breathing through her nose and mouth. The Pennsylvania Crimes Code defines strangulation as follows:

> **(a) Offense defined**.— A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:
>
> (1) applying pressure to the throat or neck; or
>
> (2) blocking the nose and mouth of the person.
>
> **(b) Physical injury**.— Infliction of a physical injury to a victim shall not be an element of the offense. The lack of physical injury to a victim shall not be a defense in a prosecution under this section.

18 Pa.C.S.A. § 2718(a), (b). Aubrey argues that the evidence in this case does not support an inference that she blocked both the "nose and mouth" of Ki.M., as required under § 2718(a)(2). This is so, according to Aubrey, because Ki.M. testified that Aubrey only held Ki.M.'s nose, but did not block her mouth. Aubrey's Brief at 15.

This argument ignores pertinent evidence. As set forth above, Ki.M. testified that Aubrey held her nose closed **and** blocked her mouth by pouring

- 5 -

water over a wet rag that covered her face, such that she was unable to breathe through either her nose or mouth.

Moreover, nothing in § 2718(a) requires the perpetrator to block the victim's nose and mouth **by hand**. The statute requires only that both be blocked. Because the record shows that Ki.M.'s nose was held shut by Aubrey's hand, and her mouth was blocked by a wet rag, the record contains sufficient evidence in support of Aubrey's strangulation conviction under § 2718(a)(2).

Next, Aubrey challenges the sufficiency of the evidence in support of her conviction for simple assault. Aubrey was convicted in this case under § 2701(a)(3), which provides that a person is guilty of simple assault if she "attempts by physical menace to put another in fear of imminent serous bodily injury." 18 Pa.C.S.A. § 2701(a)(3). Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Aubrey claims that the record fails to establish that Ki.M. was placed in fear of imminent serious bodily injury. Rather, Aubrey claims that the record, including all reasonable inferences drawn in favor of the Commonwealth, reveals only that Ki.M. was "briefly scared when she closed her mouth and could not breathe before she just leaned up with no effort to hold her down." Aubrey's Brief at 18.

Aubrey's argument ignores and misrepresents the evidence. Aubry covered Ki.M.'s whole face with a rag and then held her nose. N.T. Trial, 4/9/25, at 38-39. When Aubrey poured water, Ki.M. could not breathe through her nose, because Aubrey was holding her nose. And when Ki.M. opened her mouth, water from the wet rag prevented her from breathing. **Id.** at 56. Aubrey was pouring a lot of water on Ki.M. when Ki.M. couldn't breathe. Ki.M. did not know what was happening, and she was scared. **Id.** at 28.

Contrary to Aubrey's argument, Ki.M. was not briefly scared when she **closed** her mouth and could not breathe. Ki.M. testified that she was scared because she could not breathe through her nose and because the wet rag prevented her from breathing through her **open** mouth. These facts, viewed in a light most favorable to the Commonwealth, support an inference that Aubrey was suffocating Ki.M., and that Ki.M. was in fear of imminent serious bodily injury. Aubrey's second argument fails.

Next, Aubrey argues that the Commonwealth's evidence was insufficient to support her conviction for REAP: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "The *mens rea* for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person." **Commonwealth v. Klein**, 795 A.2d 424, 427-28 (Pa. Super. 2002). Aubrey argues that a REAP conviction requires that the victim be in actual

danger of death or serious bodily injury, rather than the apprehension of such danger. Aubrey's Brief at 19. She relies on **In re Maloney**, 636 A.2d 671 (Pa. Super. 1994), in which this Court held that a REAP conviction requires proof that the perpetrator had actual present ability to inflict harm, rather than apparent ability to do so (i.e. the Commonwealth needed to prove that the defendant's gun was loaded). *Id.* at 674-75. Aubrey also cites **Commonwealth v. Gouse**, 429 A.2d 1129 (Pa. Super. 1981), a case holding that the pointing of an unloaded gun does not support a REAP conviction.

**Maloney** and **Grouse** are off point because the present case does not involve an unloaded gun (or a gun not proven to be loaded). We observe that in **Commonwealth v. Brunson**, 938 A.2d 1057 (Pa. Super. 2007), *appeal denied*, 952 A.2d 674 (Pa. 2008), this Court held that the evidence in support of a REAP conviction was sufficient where the defendant grabbed his elderly victim by the neck, choking him, and also punched him. *Id.* at 1061. There, as here, the choking was temporary, as the victim was able to break free and flee. *Id.* at 1058-59.

Instantly, the record demonstrates more than Aubrey's apparent ability to inflict harm. Rather, Aubrey actually prevented Ki.M. from breathing until Ki.M. leaned forward and stopped the waterboarding. By preventing Ki.M. from breathing, even temporarily, Aubrey engaged in conduct which placed or may have placed Ki.M. in danger of death or serious bodily injury. Aubrey does not and cannot contend that cutting off a person's air supply carries no

risk of death or serious bodily injury. Appellant's challenge to her REAP conviction fails.

Next, Aubrey argues that the evidence is insufficient to support her EWOC conviction. Aubrey was convicted under § 4304(a)(1): "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). Aubrey's challenge to her EWOC conviction rests on the success of her challenges to her strangulation, assault, and REAP convictions. She claims that if she did not commit any of the foregoing offenses, then "by necessary implication" she did not endanger Ki.M. Aubrey's brief at 21. Because we have already rejected her challenges to the other convictions, her challenge to her EWOC conviction also fails.

Finally, Aubrey argues that the Commonwealth failed to produce sufficient evidence of a criminal conspiracy between she and Gordon. The Pennsylvania Crimes Code defines conspiracy as follows:

> **(a) Definition of conspiracy.** — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). Thus, criminal conspiracy requires "1) an agreement, 2) shared criminal intent, and 3) an overt act." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018), *appeal denied*, 205 A.3d 315 (Pa. 2018).

> At the heart of every conspiracy lies the common understanding or agreement between the actors. Implicit in any conspiracy is proof … that an accused agrees to participate in the alleged criminal activity. The criminal union being prosecuted cannot be based upon an agreement to complete a broad, undefined objective at some unknown point. Rather, the agreement must rest upon the mutual specific intent to carry out a particular criminal objective. The *sine qua non* of a conspiracy is the shared criminal intent. Without this common purpose, a conspiracy cannot be maintained.
>
> Proving the existence of such an agreement is not always easy, and is rarely proven with direct evidence. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Indeed, [a] conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed.

***Commonwealth v. Chambers***, 188 A.3d 400, 410 (Pa. 2018) (internal citations and quotation marks omitted). Preexisting relationships, such as that of a husband and wife do not, of themselves, establish a conspiracy. ***Id.*** at 410. The Commonwealth must establish the formation of an illicit agreement. ***Id.***

Aubrey claims that she committed no crime and that she acted on her own in any event. Aubrey's Brief at 22. She also argues that Ky.M.'s vague account of a brief conversation she had with Gordon and did not evidence a conspiratorial agreement. As explained above, Ky.M. testified that she heard Gordon say, "this is what we did in the war," and then Aubrey say, "OK, I'll do it," just before Aubrey took Ki.M. into the bathroom. According to Aubrey, this exchange is not sufficient evidence of a conspiracy between the Otts. Aubrey's Brief at 23-24.

Aubrey's argument relies on the perceived vagueness of Gordon's statement about "what we did in the war," but her brief ignores Ky.M.'s account of her prompt response, saying she would "do it." This exchange supports an inference that Aubrey agreed to do the thing Gordon spoke about. And the incident in question happened directly after Aubrey said she would "do it." Aubrey does not dispute that the actions Ki.M. described are known as waterboarding, nor does she dispute that waterboarding is known as a wartime torture technique. Drawing inferences in favor of the Commonwealth as verdict winner, as we must, these facts are sufficient to support a conclusion that the Otts formed an illicit agreement that Aubrey would waterboard Ki.M. Aubrey's argument to the contrary requires us to draw inferences in her favor, in contradiction of the applicable standard of review. *See Smith*, 146 A.3d at 261-262.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026